UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.       : | No. 3:21-CR-98 (JBA) |
| : | |
| TAJH WILEY, : | |
| *a/k/a "Yung"* : | |

RULING ON DEFENDANT'S SECOND MOTION FOR BOND (ECF NO. 111)

On June 8, 2021, following a wiretap investigation, a federal grand jury returned an indictment charging defendant Tajh Wiley (hereinafter, "defendant" or "Wiley") and others with conspiracy to distribute, and to possess with intent to distribute, controlled substances in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 841(b)(1)(D) and 846. ECF. No. 1.  On June 9, 2021, law enforcement arrested Wiley and this Court conducted his initial appearance and arraignment the same day.  At the initial appearance, the Government sought pre-trial detention on the grounds that defendant posed both a risk of flight and danger to the community and there were no conditions or combination of conditions that appropriately mitigated those risks.  The Court scheduled a detention hearing on June 11, 2021.  On June 10, 2021, defendant filed his first bond motion (ECF No. 50) with a proposed set of conditions, including that he reside with his mother who would serve as third party custodian.  Following the June 11, 2021 hearing, the Court granted the government's motion for detention and denied the defendant's motion for bond based on the reasons set forth in detail on the record (ECF No. 128 at 48-55) and in the Court's Order of Detention (ECF No. 75).  In doing so, the Court concluded that, while defendant had sufficiently rebutted the presumption that he was a risk of flight and

1

the government had not sustained its burden of persuasion as to risk of flight, the government had established by clear and convincing evidence that defendant posed a danger to the safety of the community and the conditions proposed would not reasonably assure the safety of the community.  In summary, the Court noted that: 1) defendant was a high-level drug trafficker engaged in multi-kilogram cocaine transactions that generated substantial proceeds; 2) that on multiple prior occasions he had been arrested and released on bond only to be arrested on new offenses which escalated in seriousness; 3) that on a very recent occasion he had been arrested in Yonkers, New York, on a charge involving possession of a kilogram of cocaine; and 4) that he made arrangements to obtain a new phone while still in custody on the Yonkers arrest, and within a short time after his release on bond in New York, engaged in even higher-level drug trafficking at issue in this case as proffered by the government through wiretap communications.[1] The Court also noted that the proposed custodian, the defendant's mother, was unsuitable as the government had proffered evidence that on one occasion she had knowingly permitted the defendant to store substantial drug proceeds at her residence pending pick-up of the proceeds by a co-conspirator.

On July 16, 2021, the defendant filed a Second Motion for Bond. ECF No. 111.  In this motion, while most conditions remained unchanged from the first motion for bond, the defendant did propose a new third party custodian, his cousin, Antoine Penn, along with the condition of home detention.  On August 2, 2021, the undersigned conducted a hearing on the defendant's second bond motion.  During the course of the hearing, the Court determined that Mr. Penn did

---

[1] The undersigned reviewed a number of affidavits in support of search warrant requests throughout the course of the wiretap investigation that led to the grand jury's return of an indictment in this matter and is familiar with the government's proffered wiretap evidence against defendant Wiley.

not have any prior criminal convictions,[2] that he works full-time as a truck driver for a company in Wallingford, Connecticut that assigns him Connecticut-based routes so that he is able to return home every day, and that he and his girlfriend, Carolyn Wheeler, own a single-family home in Waterbury where they reside with their newborn child and their teen daughter.  Defendant proposed that he reside with Mr. Penn at his home and that he be subjected to home detention.  The Court conducted a canvass of Mr. Penn and found that he understood the obligations of a third party custodian and was sincere in his desire to fulfill those obligations.  During the canvass, it also became apparent that Mr. Penn was presently working 20-30 hours per week and that, beginning in September, 2021, Mr. Penn anticipated working 40-50 hours per week and that there would be extended periods during the day when Mr. Penn would not be available to supervise defendant.  In response to this concern, both defendant and Mr. Penn explained that Ms. Wheeler was on maternity leave as of July 9, 2021, to tend to their newborn child and was available to supervise defendant when Mr. Penn was not at the residence.  Mr. Penn also explained that Ms. Wheeler is employed as a medical assistant and is expected to return to work full-time for 40-50 hours per week in October, 2021.  Their teen daughter is also expected to return to school in September.  Although she had not been originally included in his bond package as a custodian, the defendant subsequently proposed that Ms. Wheeler be added as a co-third party custodian with Mr. Penn.  Mr. Penn also suggested his willingness to install a ring camera surveillance system so that defendant could be monitored when he and Ms. Wheeler are

---

[2] According to Pretrial Services, the Drug Enforcement Agency ("DEA") arrested Mr. Penn in 2002 on a charge of possession with intent to distribute marijuana, but federal prosecution was declined and the matter was referred for state prosecution.  State records did not reveal any criminal convictions or history for Mr. Penn.  Given that this incident occurred nearly twenty years ago, it had no bearing upon the Court's evaluation of Mr. Penn's suitability as a third party custodian.

out of the residence. Defendant also suggested that Mr. Penn could provide him with a "flip" phone without web access so that defendant could stay in communications with the Pretrial Services Office. After noting that Ms. Wheeler was not present in the courtroom to be canvassed by the Court, arrangements were made for Ms. Wheeler to appear via Zoom. During a video canvass, Ms. Wheeler acknowledged her understanding of the obligations of a third party and indicated her willingness to serve in that capacity.

Admittedly, the package proposed by defendant presents the Court with a very close call. However, for the reasons set forth below, the findings set forth in detail on the record in the June 11, 2021, hearing, the Court's initial Order of Detention dated June 11, 2021, and the findings on the record in the August 2, 2021, hearing, the defendant's Second Motion for Bond is **DENIED**.

The government's proffered evidence suggests that defendant is a high-level drug trafficker who has access to substantial quantities of narcotics and engaged in multi-kilogram cocaine transactions on a regular basis. The government also proffered that it seized 822 grams of fentanyl in this investigation that is also attributable to defendant. Defendant's operation generated sizeable drug proceeds as evidenced by, among other things, his gambling of approximately $800,000 at Foxwoods Casino between 2019-2021. Based on his prior history in which defendant has repeatedly committed new offenses after having been released on bond from prior arrests, and his alleged engagement in the conduct at issue in this indictment after recently having been released on bond on a New York state charge involving possession of a kilogram of cocaine, this Court finds that there is a strong probability that defendant poses a significant danger of continued drug trafficking if he were to be released on bond. While defendant might disagree with this conclusion, the Court can only predict the defendant's future behavior based on his prior track record. The defendant's prior history only underscores the

Court's conclusion in this regard. In the Court's view, this defendant is a significant threat to continue his illicit activity as his prior history suggests and he requires increased and very close supervision over the long-term. The defendant is not an alleged low-level trafficker. Given the quantities of cocaine and fentanyl purportedly involved, the Court cannot simply accept the defendant's word that he will not offend because the risk of endangering the community is too great. *See United States v. Colombo*, 777 F.2d 96, 100 (2d Cir. 1985) ("[W]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate.").

The critical question is whether Mr. Penn and Ms. Wheeler can provide the level of supervision that defendant requires. The Court is concerned that within two months both will be working full-time and unable to supervise the defendant for long periods of time. In the interim, Ms. Wheeler also has to tend to a newborn and a teenage daughter soon to start school. While the Court appreciates their willingness to serve as custodians, the level of supervision required here in light of the defendant's prior history and his resourcefulness in the use of modern technology and encrypted applications as previously proffered by the government, is beyond what the Court can reasonably expect of third party custodians. The defendant and the proposed custodians suggest that the Court's concerns can be alleviated with the installation of a ring camera surveillance system which would allow defendant to be monitored. But, as was observed in this District by the late Hon. Mark R. Kravitz in a similar case involving an alleged high-level drug trafficker who proposed elaborate conditions, release on "such conditions would create an unfortunate precedent … [and] would allow for the creation of private jails for those who could afford it, which would at best elaborately replicate a detention facility without the confidence of security such a facility instills." *United States v. Argraves*, No. 3:09CR117 (MRK), 2010 WL

5

283064, at *4 (D. Conn., Jan. 22, 2010); citing *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (internal quotations omitted)[3]; *see also United States v. Agnello,* 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) ("A defendant who has demonstrated his unsuitability for pretrial release…should not be able to buy his way out by constructing a private jail, which cannot provide the same assurance of safety to the community that Congress sought to secure in the Bail Reform Act."). This Court is neither inclined to set such a precedent or to impose such an obligation on Mr. Penn and Ms. Wheeler to effectively create a private jail for the defendant in their home. Accordingly, the defendant's Second Motion for Bond (ECF No. 111) is **DENIED**.

**SO ORDERED**, on this 4th day of August, 2021, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
Hon. S. Dave Vatti
United States Magistrate Judge

---

[3] The undersigned, in a different capacity, was involved in the multi-defendant *Argraves* matter in 2010. At this time, it is the Court's belief that, in the context of alleged drug trafficking, there is a very small class of defendants to whom the principles articulated in *Argraves,* would apply to justify detention. Based on the reasons already articulated, particularly the defendant's prior history among other things, this Court believes that defendant Wiley is the paradigm of such a defendant that firmly belongs in that small class.