UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 3:21cr98 (JBA) |
| *v.* | |
| TAJH WILEY | May 17, 2022 |

**RULING DENYING DEFENDNANT TAJH WILEY'S MOTIONS TO SUPPRESS EVIDENCE**

Defendant Tajh Wiley is among eight defendants charged by superseding indictment for engaging in an alleged drug conspiracy to distribute and possess with intent to distribute controlled substances. He moves to suppress evidence related to the search of a motel room he occupied, as well as searches conducted during his arrest and evidence gathered from a federal wiretap warrant. (Mem. of L. in Supp. of Second Mot. to Suppress ("Def.'s Second Mem.") [Doc. # 301] at 1; Mot. & Mem. to Supp. Title III Wiretap Evid. ("Def.'s Third Mem.") [Doc. # 302] at 1.)[1] Finally, Defendant requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge what he views as misrepresentations made by investigators to procure several warrants. (Def.'s Second Mem. at 24.) The Government opposes Defendant's motions. (Gov't's Resp. to Def.'s Mot. to Suppress and for *Franks* Hr'g ("Gov't Second Resp.") [Doc. # 317] at 1; Gov't's Resp. to Def.'s Mot. to Supp. Wiretap Evid. ("Gov't Third Resp.") [Doc. # 312] at 1.) For the following reasons, Defendant's motions are DENIED.

---

[1] On December 22, 2021, Defendant first moved to suppress evidence derived from his arrest and the search of the motel room. (*See* Def.'s First Mot. to Suppress Evid. ("Def.'s First Mot.") [Doc. # 218].) Subsequently, after obtaining new representation, Defendant filed his second and third motions to suppress. Because those latter motions request the same relief, the Court denied Defendant's first motion to suppress as superseded by the second and third motions [Docs. ## 321, 323].

I.    **Background**

On or about February 12, 2020, Defendant Tajh Wiley was arrested by officers from the Fairfield police department for forgery related charges. (*See* Police Case/Incident Report, Ex. B to Gov't Second Resp. ("Police Report") [Doc. # 317-2] at 3.) The officers observed Defendant leaving the Circle Inn motel located at 417 Post Road in Fairfield, Connecticut with two other suspects, a male and a female. (*Id.*) Defendant was subsequently taken into custody after leaving the Circle Inn. (*Id.*) On his person, the officers found two cell phones, $6,160 in cash, and a key card to the Circle Inn. (*Id.*) A third phone the police attributed to Defendant was found in a BMW vehicle a short distance from the Circle Inn parking lot. (*Id.* at 8.)

Meanwhile, the detectives had stopped and questioned the female suspect seen with Defendant. (*Id.*) She informed the officers there may be marijuana in a room at the Circle Inn, before disclaiming having knowledge of any illegal activities. (*Id.* at 9.) The detectives returned to the Circle Inn and learned from management that Defendant was the renter of room number 44. (*Id.*) Fairfield police occupied a parked motor vehicle close to room number 44 watching it to ensure no one would enter or exit the room. (*Id.* at 10.) At some point, a member of the motel cleaning staff opened the door to room number 44. (*Id.*) The officers approached her and prevented her from entering the room. While interacting with this woman, the officers allegedly detected the smell of marijuana emanating from the room and observed two large cardboard boxes inside. (*Id.*) The detectives then applied for a search warrant to enter and search room number 44 attesting that they smelled the odor of marijuana and saw cardboard boxes that they suspected contained marijuana. (*See* Aff. &

2

Appl. for Search and Seizure Warrant, Ex. A to Def.'s Second Mot. ("First State Warrant") [Doc. # 301] ¶ 11.)

Later that day, Connecticut Superior Court Judge Pavia issued a warrant authorizing a search of room number 44. (*See* First State Warrant.) Upon execution of the search warrant, the officers examined the two cardboard boxes, which contained six plastic bags containing what they suspected to be marijuana weighing approximately sixteen pounds, eight empty plastic bags, and another box containing packaging material. (*See* Aff. & Appl. for Search and Seizure Warrant, Ex. D to Def.'s First Motion ("Second State Warrant") [Doc. # 218-5] at 5, ¶ 12.) Two days later, Fairfield police applied and received authorization for a warrant to search the cell phones recovered from the arrest of Defendant and the vehicle he occupied based on their representation that the boxes contained over sixteen pounds and four ounces of marijuana. (Second State Warrant at 24-25, 29.) To be sure of their findings, Fairfield Police detectives thereafter tested the suspected marijuana using a KN 909 field test kit. The test returned results inconclusive for marijuana but detected cannabidiol (*see* Lab. Report, Ex. C to Def.'s First Mot. ("Lab Report") [Doc. # 218-4] at 2-3)—a possible indication that hemp and marijuana have been comingled, (*id.* at 4).[2]

The detectives then shared their findings with the Drug Enforcement Agency ("DEA"). (*See* Aff. in Supp. of Wiretap Appl., Ex. E [Doc. # 239] at 23, ¶¶ 36-37.) The DEA had been conducting an ongoing investigation of Defendant since 2018, when his suspected drug

---

[2] The Lab Report's results were not completed until April 26, 2021, after the Second State Warrant was signed on February 14, 2020 and the later federal wiretap application was approved on April 15, 2021.

trafficking discussions were intercepted during surveillance in another investigation in which he was never charged. (*See* Aff. in Supp. of Appl. [Doc. # 239] at 27-29.) As part of its investigation, the DEA reviewed downloads from Defendant's cell phones. (*Id.* at 28-40.)

On April 15, 2021, DEA agents also applied for and received a warrant to use a wiretap to surveil communications on two telephone numbers attributed to Defendant. (*See id.*) The affidavit in support of the application set forth the DEA's purported probable cause for the wiretap, largely derived from historical information on Defendant, including interceptions on the 2018 wiretap, Defendant's 2020 Fairfield arrest (and subsequent search of his phones), another arrest in Yonkers, New York in 2021 for possession of a kilogram of cocaine, vehicle trackers, vehicle stops, intercepts from an unrelated wiretap of a marijuana dealer based in Mashantucket Pequot tribal land, drug-related communications on the phones of other suspects, surveillance of Defendant and others, Defendant's unexplained wealth, his social media posts, and other sources. (*Id.* at 21-113.)

## II.   Discussion

Defendant seeks four categories of relief: first, suppression of evidence seized or otherwise developed by Fairfield Police in February 2020 in connection with his Fairfield arrest and the search of the Circle Inn; second, a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) regarding the validity of the search warrant obtained by Fairfield police to search the Circle Inn; third, suppression of all evidence developed in the DEA investigation of Defendant and consequent dismissal of the pending prosecution; and fourth, suppression of evidence derived from the April 15, 2021 DEA wiretap warrant. (Def.'s Second Mem. at 1; Def.'s Third Mem. at 1.) The Government argues that Defendant is foreclosed from each of his requests for relief. Initially, the Government argues that Defendant lacks standing to

challenge the searches by the Fairfield Police. (Gov't Second Resp. at 8-9.) Next, even if Defendant has standing, the Government argues that he has not demonstrated any false statements necessitating a *Franks* hearing. (*Id.* at 16-18.) Finally, the Government argues that Defendant has not demonstrated a Fourth Amendment violation requiring suppression or dismissal of the charges. (*Id.* at 22-28.)

### A. Evidence Derived from Fairfield Police Investigation

As an initial matter, the Government challenges Defendant's standing to suppress evidence acquired from searches of the Circle Inn motel room, the BMW, the cell phones seized from his person and the BMW on February 12, 2020, and all subsequent evidence obtained by federal authorities. (Gov't Second Opp'n at 10-12.) The Government argues that Defendant has not established that he had a possessory interest in the contents of the Circle Inn room, the BMW, or the cell phones that were seized. (*Id.* at 11). Moreover, the Government contends that Defendant "does not even minimally identify what, exactly, [he] is seeking to suppress" in his request to suppress the subsequent evidence obtained by federal authorities. (*Id.* at 12.)

Defendant argues that he has standing to suppress evidence obtained from the Circle Inn motel room because the First State Warrant application asserted that he occupied that room. (Def.'s Second Mem. at 3.) Defendant does not advance arguments supporting his standing to challenge the search of the BMW or "all of the subsequent evidence obtained by federal authorities," including "evidence derived from Title III wiretaps, GPS tracking, Trap and Trace surveillance, financial records, social media accounts, and cellphone records." (*Id.* at 1.)

The Fourth Amendment recognizes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, "a defendant's Fourth Amendment rights are violated 'only when the

challenged conduct invade[s] *his* legitimate expectation of privacy rather than that of a third party.'" *United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018) (quoting *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002)) (alteration in original), *cert. denied*, 139 S. Ct. 1467 (2019). "[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search. *Id.* at 131 n.1.

Here, Defendant has not demonstrated that he has standing to challenge the search of the Circle Inn motel room, the BMW, the cell phone recovered in the BMW, or the "subsequent evidence obtained by federal authorities." First Defendant does not have standing to challenge the search of the Circle Inn motel room merely because the Government alleges that he occupied that room.[3] *See United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (holding that the defendant could not challenge the search of a residence merely because he anticipated that the Government would link the objects recovered in that search to defendant at trial). And he does not provide an affidavit or alternative basis to assert his possessory interest in the motel room. Nor can he challenge the search of the BMW.

---

[3] Because Defendant does not have standing to challenge the search of the Circle Inn motel room, the Court denies Defendant's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978) regarding the alleged misstatements by police in the warrant application to search that room. Notably, even if Defendant had standing, he fails on the first prong of *Franks*. Defendant must demonstrate that "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000). Defendant argues that the police misled the issuing judge by stating that Defendant's "associate Alexandria Frasca exited room #44 of the Circle Inn before entering the BMW." (Def.'s Second Mem. at 18.) But that precise observation was memorialized in the Fairfield Police Report describing the events of the arrest. (*See* Police Report at 6 ("Subsequently, minutes later, a white female, later identified as Alexandria Frasca [] of Fairfield exited room #44, and she got into the front seat.").)

By Defendant's account, he was a passenger in this vehicle. (*See* Def.'s Second Mot. at 8.) According to the First State Warrant, the BMW is registered to Defendant's step-father. (First State Warrant [Doc. # 218-3] at 5, ¶ 7.) Thus, Defendant has not shown that he had a possessory interest in the vehicle.

For a similar reason, without an affidavit asserting his ownership of the cell phone recovered by police, Defendant does not demonstrate that he had a possessory interest in the cell phone that was recovered from the BMW. Finally, as the Government argues, Defendant's request to suppress including "evidence derived from Title III wiretaps, GPS tracking, Trap and Trace surveillance, financial records, social media accounts, and cellphone records," (Def.'s Second Mem. at 1), does not specify what warrants he challenges. Because this critical and basic information is missing, the Court denies Defendant's motion with respect to these items. *See United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); *United States v. Mullen*, 451 F. Supp. 2d 509, 526 (W.D.N.Y. 2006) (denying motion to suppress multiple Title III wiretap orders where the defendant failed to establish which specific order he had standing to challenge). [4]

However, Defendant does have standing to challenge the validity of the Second State Warrant which authorized the search of the cell phones recovered from him at the time of

---

[4] Defendant also challenges the warrantless acquisition of the guest list from Circle Inn management and the police officers' failure to maintain security of the motel room before a member of Circle Inn staff opened the door to the room. Defendant does not cite to any relevant caselaw persuading the Court that this police conduct violated the Fourth Amendment. The police acquired the guest list from Circle Inn management personnel voluntarily. *See City of Los Angeles v. Patel*, 576 U.S 409 (2015) ("[H]otel operators remain free to consent to searches of their registries."). Also, there is no basis for suppression based on the officers' conduct while awaiting a warrant to search the motel room. The officers' brief lapse in vigilance does not rise to a violation of Defendant's Fourth Amendment rights, particularly where he has failed to establish standing to challenge the subsequent search.

his arrest by Fairfield police. To establish standing, Defendant need only demonstrate that he had a legitimate expectation of privacy in the place searched. *See United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008). He has done so because he has a privacy interest in the cell phones recovered from his person and the location and communications information they might reveal.[5] *See Carpenter v. United States*, 138 S. Ct. 2206 (2018) (recognizing that individuals have a reasonable expectation of privacy in cell-site data, and holding that the acquisition of that data from wireless carriers who maintain it constitutes a search that, under the Fourth Amendment, requiring "a warrant supported by probable cause"); *United States v. Herron*, F. Supp. 3d 391, 401 (E.D.N.Y. 2014) (finding that defendant had standing to challenge search of a phone recovered from his person and that the government represented was used by him).

Although the Court finds that Defendant has standing to challenge the search of the cell phones recovered from him at his arrest, he does not make a colorable argument that their seizure and search violated the Fourth Amendment. First, the cell phones were lawfully seized as fruits of a lawful search incident to his arrest. *See United States v. Robinson*, 414 U.S. 218 (1973). Second, the searches of those cell phones were conducted pursuant to subsequent warrants. As Defendant does not specify which of these warrants he challenges or why they are constitutionally infirm, he has not met his burden to persuade the Court that suppression is appropriate. Defendant's motion to suppress is denied on this basis.

---

[5] This rationale extends only to the Second State Warrant. Because the Supreme Court has held that defendants do not have a legitimate expectation of privacy in the numbers dialed on their phone, pen registers fall outside of the Fourth Amendment's protection. *See Smith v. Maryland*, 442 U.S. 735, 745-46 (1979). Accordingly, insofar as Defendant's challenge to "Trap and Trace surveillance" refers to pen registers, he does not have standing.

### B.  Wire Tap Warrant

Defendant argues that "the supporting affidavit impermissibly relied on generalizations and boilerplate language that is commonly applicable to a narcotics case, and further failed to establish that a wiretap was necessary because 'normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" (Def.'s Third Mot. to Supp. at 1 (citing 18 U.S.C. § 2518(1)(c), (3)(c)).)

A wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). In requiring disclosure as to the use, attempted use, and difficulties of employing other investigative techniques, Congress "struck a balance between the needs of law enforcement officials and the privacy rights of the individual." *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009) (internal quotation and alteration omitted). Even where a wiretap would be the most efficient method, the statutory requirement "reflects a congressional judgment that the cost of such efficiency in terms of privacy interests is too high," absent a sufficient showing of necessity. *Id.* (quoting *United States v. Lilla*, 699 F.2d 99, 105 n.7 (2d Cir.1983)). The question, therefore, "is not whether a wiretap provides the simplest, most efficient means of conducting an investigation; telephonic surveillance may only be used when it is necessary to assist in law enforcement." *Id.*

The statute does not require, however, "that any particular investigative procedures must be exhausted before a wiretap may be authorized." *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997) (internal quotation and alteration omitted). Title III does not "preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather [it] only require[s] that the agents inform the

authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir.1979) (internal quotation omitted). Thus, the facts set forth in the application must only be "minimally adequate to support" the issuing judge's determination of a valid application. *Miller*, 116 F.3d at 663; *see also United States v. Gigante*, 979 F. Supp. 959, 963 (S.D.N.Y. 1997) ("so long as fundamental constitutional rights are preserved, the issuing court's determination should not be subjected to gratuitous 'Monday morning quarterbacking.'").

Defendant appears to advocate for an affirmative requirement that government agents exhaust other investigative techniques before resorting to a wiretap. But that is not the law. Instead, the application provided detailed explanations as to why various techniques would not (in the affiant's estimation) serve the purposes sought by the wiretap application. (*See* Aff. in Supp. of Wiretap Appl., Ex. E [Doc. # 239] ¶¶ 255-56, 258-59, 262, 266, 270, 273.) For example, the affiant notes that, despite the success investigators had with previous intercepted communications, they did not "reveal the full nature, places, extent and methods of the drug trafficking organization and the roles" of Defendant and other unnamed co-conspirators. (*Id.* at 136, ¶ 266.) As another example, the affiant explains that the use of an undercover agent to acquire the equivalent information was contemplated by investigators but deemed unproductive because such agent would not be able to gain credibility with the Defendants and could potentially frustrate the investigation if suspicions were raised. (*Id.* at 132, ¶¶ 255-56.) Given the affiant's clearly stated objective of "discovering the full scope and identification of key personnel involved in illegal drug trafficking" with Defendant, (*id.* at 113 ¶ 224(a)), and the affiant's extensive explanations why various techniques would not be productive to that end, the application was adequate. *See United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990) (upholding wiretap order where the application noted that

confidential informants had minor role in the overall scale of operation); *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir. 1987) (upholding wiretap order where the application noted that physical surveillance impractical as it would have likely been conspicuous and drawn attention to the investigators); *United States v. Martino*, 664 F.2d 860, 868 (2d Cir. 1981) (upholding wiretap order where the application noted use of pen register data and toll records but did not identify participants to a phone conversation or other coconspirators). Defendant's motion is denied on that basis.

III.     **Conclusion**[6]

For the forgoing reasons, Defendant's motions to suppress and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) [Docs. ## 300, 302] are DENIED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of May 2022.

---

[6] Because Defendant has not demonstrated that he has standing to challenge the searches and seizures of items found in the Circle Inn and the BMW, or that a Fourth Amendment violation occurred during the search of the cell phones seized incident to his arrest, his fruit from the poisonous tree argument lacks legs as well because it is based on the invalidity of those searches and seizures.