IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TAJH WILEY, *et. al.* | Case No. 3:21-cr-98 (JBA)<br><br>June 22, 2022 |

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ADMIT YOUTUBE EVIDENCE**

The Government submits this motion and memorandum of law in response to the Court's recent ruling (Doc. #375) on Wiley's motion to preclude YouTube videos as evidence at trial. For the reasons discussed below, the Court should admit the four YouTube videos and screenshots described below, and allow use of the Government's transcripts of the audio contained in the video recordings as a jury aid. Transcripts[1] of the audio contained in the four YouTube Videos are attached to this motion as Government's **Exhibits A-D**. A disc containing the digital YouTube video files will be attached to this motion as Government's **Exhibit E**.

**I. Background**

The Government previously disclosed music videos from the multimedia website YouTube as potential exhibits for trial. The videos depicted Wiley, using the moniker "Yung 252," reciting music lyrics and appearing as the primary focus of each video. Wiley moved to preclude the videos from trial on the basis of unfair prejudice and as inadmissible character evidence. Doc. #244-1. The Court denied Wiley's motion without prejudice and directed the Government "to set out which videos or excerpts of videos it will seek to offer at trial, as well as identify the purpose(s) for

---

[1] Where the audio of a lyric in a video recording are unintelligible, the transcript is marked "U/I", where "Ph" signifies a phonetic transcription.

1

introducing them, in order to give the Court and Wiley the opportunity to assess their admissibility." Doc. # 375 at 3.

Following the Court's ruling, the Government pared down its YouTube video evidence and now only seeks to offer one full video and three video excerpts, as described below. The Government seeks to offer the full video (3 minutes and 14 seconds), transcript, and screenshot of "Chosen One," posted to YouTube on December 11, 2020 by user "Esbei2x" (*available at* https://www.youtube.com/watch?v=7xghnWCPPuM). Wiley is the primary focus of the video, which features Wiley in a luxury vehicle and in a luxury home. In several clips of the video totaling approximately 14 seconds, while seated in a luxury vehicle, Wiley displays what appears to be a firearm. Wiley also poses in front of a white Range Rover, a vehicle observed by DEA investigators during the investigation. Moreover, the Government intends to offer evidence of Wiley's February 2021 arrest after the Yonkers (New York) Police seized a kilogram of cocaine from Wiley while he was travelling in the white Range Rover. Wiley is wearing jewelry and a diamond-encrusted watch. Wiley again raps about his unexplained wealth, including, "Fuck it if the bank closed, nigga I got them bankrolls." Wiley also raps about the distribution of controlled substances, "Young niggas wilding serving fiends out a rental – He's asking for that coke, I aint trippin its cool." The Government believes that "coke" is a reference to cocaine, a substance that is an object of the drug trafficking conspiracy. Moreover, Wiley raps about *his own* packaging and processing of controlled substances, "The press machine I finesse and turn that one into two – Them jack boys on my gram, yeah they clocking my moves." Wiley goes on, "Dope is a 5 put that fetty and turn to an 8 – remember my mamma looked under my bed, found a blade and a plate – I was like 17 and with a buck, nigga, selling that base." He later brags about his wealth, "Bitch, you make in a year, bitch, I blow in a day." The Government believes that "fetty" is a reference to

fentanyl, a substance that is an object of the drug trafficking conspiracy. Moreover, during the charged conspiracy Wiley, in an intercepted wire communication, acquired a kilogram press machine and kilogram press machines were later found at co-defendant Kenston Harry's residence on June 9, 2021. The Government has included a full transcript of the lyrics in "Chosen One" as **Exhibit A** to this motion.

The Government also seeks to offer a 44-second excerpt of the music video "Faith," posted to YouTube on May 31, 2020 by user "WLVisuals" (*available at,* https://www.youtube.com/watch?v=3XHa5D8HxJs), along with the transcript and screenshot of the YouTube video. Wiley again is the primary focus of the video, which appears to be filmed inside of a restaurant or recording studio. No firearms appear in the video. Some of Wiley's lyrics in this video include, "Bitch I'm fresh up off a drug deal, want to sign a nigga well I need a couple mil." Wiley also references losing money at the casinos, "Fuck around in the casinos lost a half a mil, and it was only 3 months nigga I aint have no deal," and mentions law enforcement, "I know the police still on me, I'm still getting it still, Yeah, yeah, but I'm still getting it still." The Government views this lyric as an admission against Wiley's interest that, despite law enforcement knowledge of his status as a drug distributor near in time to May 2020, he is "getting it still," or acquiring drugs for distribution. The Government also intends to introduce corroborative evidence of Wiley's unexplained wealth, earned through the drug trade where Wiley had no legitimate income, which he later spent at casinos. In a February 2021 interview with the Yonkers Police Department, after Wiley was arrested for his possession of a kilogram of cocaine, he stated that, in part, he sells cocaine and marijuana so that he can gamble. The Government also seeks to introduce records showing Wiley gambling hundreds of thousands of dollars at the Foxwoods

casino. The Government has included a transcript of the lyrics in the excerpt of "Faith" as **Exhibit B** to this motion.

The Government seeks to offer a 16-second excerpt of the music video "Why You Hate Me," posted to YouTube on July 18, 2020 by user "Esbei2x" (*available at* https://www.youtube.com/watch?v=6_p742zXjR4), along with the transcript and screenshot of the YouTube video. Wiley appears as the primary focus of the music video excerpt, standing outside in front of a Lamborghini, inside of a luxury home, and displaying diamond encrusted watches. No other individuals appear in the video, nor do any firearms. Some of the lyrics recited in this video are: "Started from the bottom bitch, I started with a ball – I ain't even know how to sell crack I had to get it off – Gave my heart to the trap cause a nigga want it all." The Government believes that this lyric relates to a "ball," one eighth of one ounce of cocaine commonly referred to as an "eight ball," and crack cocaine (cocaine base). During the conspiracy in several intercepted wire communications, Wiley spoke with coconspirator Charles Richardson about the distribution of "eight balls" of cocaine. Further, on June 9, 2021, Wiley possessed a quantity of crack cocaine in his vehicle and is charged with possession with intent to distribute that substance in Count Four of the Superseding Indictment. In "Why You Hate Me", Wiley admits, in sum, that he learned how to sell crack cocaine. In the Government's view, this lyric is direct evidence of his possession of crack cocaine with intent to sell it, as opposed to possession for personal use or some other reason. The Government has included a transcript of the lyrics in the excerpt of "Why You Hate Me" as **Exhibit C** to this motion.

Finally, the Government seeks to offer a 2 minutes and 8 seconds excerpt of "Lamborghini Dreams," posted on YouTube on June 8, 2020 by user "Yung 252" (available at https://www.youtube.com/watch?v=ZszcXrYdYfI), along with the transcript and screenshot of the

YouTube video. Wiley is the primary focus of the video and no firearms appear in the video. Notably, Wiley appears outside of the Action Audio store in Hartford, which was owned and operated by codefendant Harry. Setting aside the lyrics, the video establishes Wiley's longstanding connection to Harry during the charged conspiracy. Wiley is also depicted in Harry's white Bentley SUV, a vehicle that was observed by DEA surveillance at the Action Audio Store and on dates of drug distribution during the wiretap. Wiley's use of the Bentley, an expensive luxury vehicle, also demonstrates a level of trust between Wiley and Harry dating back to at least June 2020. The lyrics include drug dealing references, such as "Knew I was going to be a trap nigga. Watch my cousin cook (ph) crack, servin (ph) fiends on the flip phone when I made my first rap" and "When I work here I cash out and empty out the stash. Tell them baggers, go to store grab some sandwich bags." In addition, the lyrics mention Wiley's involvement in the preparation of drugs (cocaine base) for distribution, "Get that crack, put it by the fan. Let it dry by itself." Wiley also directly references that his motivation for drug distribution is to earn illicit wealth, "I'm going to keep trappin until I buy a Lamborghini." The Government has included a transcript of the lyrics in the excerpt of "Why You Hate Me" as **Exhibit D** to this motion.

The portions of the video files that the Government intends to introduce at trial, that is, the digital video files, will be provided to the Court and counsel on a disc marked as **Exhibit E**.

II. <u>Argument</u>

**A. The YouTube Videos are Relevant Under Federal Rule of Evidence 401**

Under Federal Rule of Evidence 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." In this Circuit and around the country, "federal courts have found rap lyrics or videos to be relevant evidence in criminal trials based on the content of

5

the evidence and the issues in the case." *United States v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1871909, at *3 (E.D.N.Y. May 8, 2014), *aff'd*, 762 F. App'x 25 (2d Cir. 2019); *United States v. Pierce*, 785 F.3d 832, 840 (2d Cir. 2015) (affirming district court's admission of rap videos, which helped establish the defendant's "association with members of the enterprise and his motive to participate in the charged conduct against members of the Young Gunnaz"); *United States v. Carpenter*, 372 F. Supp. 3d 74, 77 (E.D.N.Y. 2019) (finding rap song music videos relevant); *United States v. Rivera*, No. 13-CR-149 KAM, 2015 WL 1757777, at *4-5 (E.D.N.Y. Apr. 17, 2015) ("court finds, based on the government's showing, that the proffered video evidence bears on the proof of defendants' charged conduct"); *United States v. Jones*, No. 05–CR–322 (NAM), 2007 WL 1428464, at *7 (N.D.N.Y. May 11, 2007) (rap lyrics showed defendant's knowledge of the gang alleged to be responsible for the racketeering activity and of the gang violence ); *see also United States v. Stuckey*, 253 F. App'x 468, 482 (6th Cir. 2007) (defendant's rap lyrics describing shooting and disposal of bodies in a manner similar to that of the charged crime were relevant and properly admitted); *United States v. Foster*, 939 F.2d 445, 456 (7th Cir.1991) (rap lyrics showed that the defendant was knowledgeable of the drug trade and certain drug code words).

As the court explained in *Carpenter*:

> After reviewing the above-mentioned material, the Court finds the content of the music videos and song lyrics to be generally relevant to the issues presented in this case. The government maintains that the videos and lyrics refer to individuals involved with the Defendant in drug trafficking; explains the Defendant's preferred process for preparing and delivering drugs; show knowledge of the vocabulary and environment of the drug trade; and refer to the minimum quantity of illegal drugs that the Defendant sold to a given customer. Evidence supporting these contentions corroborate the alleged drug trafficking conspiracy and the weight of illegal drugs sold during the conspiracy. All of this is potentially relevant to Count One of the superseding indictment. Further, some of the videos and lyrics depict and describe the Defendant possessing and

> brandishing a weapon. Some even describe Carpenter's reasoning
> for purportedly carrying a weapon in furtherance of trafficking and
> selling illegal drugs. In the "Might Not Make it Home" video, the
> Defendant is shown brandishing a weapon that the government
> contends is the .38 revolver recovered from the passenger seat of the
> Vehicle. This evidence is relevant to Counts Two and Three of the
> superseding indictment.

*Carpente*r, 372 F. Supp. at 77.

The defendant has not raised any argument that the rap videos are protected by the First Amendment. In any event, such arguments have similarly been squarely rejected by courts. *See e.g.*, *Herron,* No. 10–CR–615, 2014 WL 1871909, at *2-3 (E.D.N.Y. May 8, 2014) (rejecting defendant's argument on First Amendment grounds for preclusion of rap-related videos); *see also Pierce*, 785 F.3d at 841 ("Colon's First Amendment rights were not implicated when the district court admitted the evidence from his social media account"); *see also Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."); *United States v. Salameh,* 152 F.3d 88, 111-12 (2d Cir. 1998) (rejecting arguments that the First Amendment bars admission of evidence of a defendant's political speech when the materials were used to prove motive and intent and "provided circumstantial proof of a connection among the conspirators").

Wiley does not and cannot make a claim that the music videos are not relevant. Indeed, Wiley plainly conceded in his motion to preclude that "the video evidence may be relevant as to whether the defendant obtained his cash from drug sales . . ." Doc. #244, Def. Mem. at 2. The videos show his association with the distribution of controlled substances, specifically his referencing "crack" (cocaine), "coke" (cocaine), "base" (cocaine base), "dope" (heroin), and "fetty" (fentanyl), his processing of controlled substances and uses of a "press" (kilogram press),

and provide relevant evidence of Wiley's unexplained wealth, including his loss of large sums of money at casinos. The videos squarely constitute admissions by a party opponent, *see* Federal Rule of Evidence 801(2)(2)(A).

The videos additionally reference Wiley's life as a drug trafficker and thus corroborate (and are corroborated by) evidence developed by the investigation. In "Faith", posted May 31, 2020, Wiley bluntly says, "Bitch, I'm fresh up off a drug deal." Soon thereafter, Wiley, in "Faith", brags, "Fuck around in the casinos lost a half a mil [million dollars], and it was only 3 months nigga I aint have no deal." As part of the investigation, DEA investigators determined that, based on records received from the Foxwoods casino, Wiley gambled significant sums of money at the casino, despite his lack of legitimate employment. In 2019, Wiley bought-in, or played, over $461,000, losing over $310,000. In 2020, Wiley had a better year, having bought-in, or played over $223,000, winning over $28,000. (Wiley was also known to frequent other casinos.) Wiley's lyrics reference real-world events, his use of drug-derived funds to gamble significant amounts of money at casinos. Wiley also raps, "I know the police still on me, I'm getting it still, yeah, yeah, I'm getting it still." This lyric shows Wiley's knowledge that, despite having been arrested by state law enforcement in 2019 and in 2020, Wiley continues to receive or "[get]" controlled substances for distribution, even if police are "still on [him]." Wiley also uses the term "broke some bread" in the lyrics, a term which, after a drug transaction, he used in an intercepted communication with codefendant Jevaughn Watson where Wiley sought to "break bread" with Watson to alleviate a drug debt.

Most tellingly, in "Chosen One," Wiley describes his drug trafficking operation in a manner that corroborates other evidence developed in the investigation and seized from Wiley and his confederates at the time of the federal arrests and takedown searches. Wiley references the use

8

of rental cars, which DEA investigators observed used by the Wiley drug trafficking organization ("DTO"). He also references cocaine ("coke"), a substance seized from Wiley and his co-conspirator Harry on June 9, 2021. Wiley further raps about his use of a kilogram press machine to prepare cocaine using dilutants and adulterants in order to increase the volume of cocaine available for sale from one kilogram to two kilograms: "The press machine I finesse and turn one [kilogram] into two [kilograms]." In intercepted communications over Wiley's cellular telephone, Wiley discussed the use of kilogram presses, discussed dilutants and adulterants, and was heard using what sounded like a kilogram press. On June 9, 2021, at co-conspirator Harry's residence—a location frequently used by Wiley to package and distribute controlled substances—DEA investigators seized two kilogram presses from the WILEY DTO.

In the same video, "Chosen One," Wiley raps about increasing the strength of controlled substances by adding fentanyl, "Dope is a 5, put in that fetty and turn it to an 8." Over a kilogram of fentanyl was seized from the WILEY DTO at Harry's residence on June 9, 2021.

In "Lamborghini Dreams," Wiley raps about the preparation of crack cocaine: "Get that crack, put it by the fan. Let it dry by itself." At the time of his arrest on June 9, 2021, Wiley possessed crack cocaine (cocaine base) which the Government alleges he intended to sell. Furthermore, Wiley describes his motive for drug trafficking and means for affording a luxury vehicle – that he "is going to keep trappin until [he] buy[s] a Lamborghini." Indeed, Wiley leased several luxury vehicles during the investigation, first a Range Rover and later a Mercedes-Benz valued at over $145,000 – though a Lamborghini would be a more costly vehicle. Lastly, the video excerpt was filmed in front of the Action Audio Store in Hartford. The video demonstrates Wiley's connection to Harry and the premises, which was owned and operated by Harry and used as a storage and distribution hub for the WILEY DTO. Specifically, pole camera footage captured

Wiley and Harry at the location (and later Harry's residence) on April 27, 2021, April 28, 2021, and May 7, 2021, amongst other dates, engaged in drug activity which was supported by intercepted wire communications.

The visual backdrop in "Lamborghini Dreams" is certainly relevant evidence of the drug trafficking conspiracy. With respect to the lyrics, the excerpt is largely autobiographical and details Wiley's growth as a drug distributor. Wiley begins by citing his own date of birth. He later discusses street-level drug dealing, "serving fiends (i.e., drug users) on the flip phone" and watching his cousin cook crack (cocaine base). Wiley later discusses growing into large scale drug dealing, "Ever seen two hundred pounds . . . ?" Wiley also mentions individuals who package controlled substances, "tell them baggers, go to the store grab some sandwich bags." Eventually, Wiley references his mother's knowledge of his role in the drug trade, "And my momma said you do that crime, you do it by yourself." This is relevant because in intercepted wire communications between Wiley and his mother, Wiley's mother directly instructed Wiley not to put items into her home, indicative of her knowledge of Wiley's role in the distribution of controlled substances. Wiley was attempting to temporarily store a large quantity of cash that he did not want to be driving with, cash which was later acquired by codefendant Wade. Wiley also makes reference to a "Bentley" in connection with his drug distribution, the type of vehicle used by codefendant Harry.

The music videos are unquestionably relevant evidence under Fed. R. Ev. 401. Wiley's music videos provide significant context – *his own words* – to his drug dealing and unexplained wealth. The videos discuss Wiley preparing and delivering drugs, show his knowledge of the vocabulary and environment of the drug trade, his use of tools of the trade, including kilogram presses, and corroborate Wiley's role as a drug trafficker of multiple substances *(i.e.*, cocaine,

crack cocaine, fentanyl). *See Carpente*r, 372 F. Supp. at 77. The contents of the videos, including lyrics and imagery, are plainly relevant to Counts One and Four of the Superseding indictment.

**B. The Videos are Not Unduly Prejudicial under Federal Rule of Evidence 403**

Although the Government originally stated that it "may seek to introduce" five YouTube videos at trial, Doc. # 266 at 1, the Government has significantly pared down the video evidence to one full video and three video excerpts. In total, the Government seeks to admit 6 minutes and 22 seconds of YouTube video evidence. These videos, in their shortened forms, are not cumulative and will not waste the jury's time. The videos provide relevant evidence – Wiley's own words and admissions – of his knowledge, participation, and motivation in drug trafficking and his unexplained wealth. "Faith" refers to Wiley's generic drug dealing. "Why You Hate Me" refers to the distribution of "eight balls" of cocaine and crack cocaine. "Chosen One" references cocaine, "dope" and "fetty," fentanyl. "Lamborghini Dreams" describes Wiley's upbringing in the drug trade and references crack cocaine, bagging other substances, and receiving "a load." Here where Wiley is charged in Count One with a polysubstance drug distribution conspiracy, his description of his distribution of varying substances is relevant evidence.

Wiley previously argued that the videos should be excluded because any probative value is outweighed by "significant risk of provoking an emotional reaction from the jury," which would cause unfair prejudice under Federal Rule of Evidence 403. Doc. #244, Def. Mem. at 3. According to Wiley, the "the photographs and comments depicted offended and join a stereotypical drug dealer lifestyle, that is precisely what the jury will believe him to be." Def. Mem. at 3.

This circular logic is meritless. Wiley's argument that the videos depict him living the "stereotypical drug dealer lifestyle," is actually evidence *for* their admissibility, not against it. The Government is charged here to prove that Wiley was indeed a drug dealer, so evidence—from

11

Wiley himself—that he acted in a manner consistent with drug dealing cannot be regarded as somehow *per se* prejudicial and thus inadmissible.

Moreover, because Wiley's "drug dealer lifestyle" depicted in the videos was corroborated by the DEA's investigation, the risk of unfair prejudice dwindles to nothing. The trappings of his drug dealing visible in the videos—including his ownership of valuable jewelry, his use of a luxury car and his wagering of large sums at a casino—were corroborated by investigators who reviewed casino records showing hundreds of thousands of wagers from Wiley and who seized jewelry from Wiley, a brand new, leased Mercedes-Benz valued at over $145,000, and other indicia of unexplained wealth. This is not an instance in which an individual created art representing an aspirational fantasy. It reflected Wiley's lived experience, including specific autobiographic details that were later supported by the DEA investigation.

The case law amply supports admission of the videos. Unfair prejudice is an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed .R .Evid. 403 Advisory Comm. Notes). Evidence, however, is not unduly prejudicial when it is not "more inflammatory than the charged crime[s]." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir.1999); *see also United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (noting evidence in rap videos "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged" (alteration in original)); *United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (touchstone of the prejudice analysis under Rule 403 is whether the proffered evidence does "not involve conduct any more sensational or disturbing than the crimes with which" the defendant is charged); *United States v. Moore*, 639 F.3d 443, 447-48 (8th Cir. 2011) (affirming admission of profane and violent rap recordings over Fed. R. Evid. 403 challenge where

lyrics were probative of defendant's participation in narcotics conspiracy); *United States v. Belfast*, 611 F.3d 783, 820 (11th Cir. 2010) (rap lyrics were relevant and their probative value not substantially outweighed by any unfair prejudice in case where lyrics were used to show the defendant's association). As the court explained in *Rivera*:

> videos depicting the defendants with firearms, cash and drugs are highly probative to the weapons-related charges, narcotics trafficking charges and money laundering charges. The probative value of these video excerpts outweighs the risk of unfair prejudice under Rule 403 and, therefore, they are admissible . . . The defendants may offer evidence at trial and appropriate arguments in summation that the weapons, cash and drugs depicted are 'props,' but it is up to the jury to weigh this evidence and decide what is depicted.

*Rivera*, 2015 WL 1757777, at *8.

Here, as in *Herron*, "[w]hile it is true that the videos contain profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is 'more inflammatory' than the charged crimes . . . . Therefore to the extent the evidence is probative, it is not substantially outweighed by a danger of unfair prejudice." *Herron*, 2014 WL 1871909, at *5. As in *Rivera*, the videos depicting Wiley reciting lyrics about his drug dealing and displaying cash and jewelry, are highly probative to his narcotics trafficking charges. *Rivera*, 2015 WL 1757777, at *8. And as the Sixth Circuit held in *Stuckey*, "rap is no longer an underground phenomenon and is a mainstream music genre. Reasonable jurors would be unlikely to reason that a rapper is violent simply because he raps about violence." *Stuckey*, 253 F. App'x at 484.

In fact, preclusion of such probative evidence would be unfair to the Government. In these videos, Wiley admits to his involvement in drug trafficking, details aspects of his drug trafficking

13

organization, explains his use of kilogram presses, and cites drug trafficking as the source of his explained wealth. It was Wiley himself who chose to create music videos that speak about his lifestyle and reference his real-world drug-dealing activities, rather than making music with a more generic subject. The credible evidence will establish that these videos were used to promote Wiley's status as a drug distributor, and the videos themselves depict Wiley bragging about his ill-gained wealth.

To be sure, the videos may be detrimental to Wiley's case – after all, *they include his own words and admissions* about his drug distribution. But evidence does not become overly prejudicial, nor is exclusion required, merely because of the potential significant weight a certain piece of evidence may be afforded by a jury. One may as well exclude a defendant's lawful confession or seizures from his home because they "prejudice" his defense. But the question here is not whether the videos are damaging to Wiley's case, but whether they create unfair prejudice under the law. They do not.

To prove a conspiracy at trial, the Government must establish the existence of the WILEY DTO, the substances and quantities that were distributed by the DTO, and Wiley's membership within it. These videos provide critical evidence in that regard, including Wiley's leadership role. Though Wiley requests "similar oral testimony" should he be unsuccessful in excluding the videos, Def. Mem. at 3, there is simply no witness who could summarize Wiley's own words and admissions, and an oral summary of the videos would not be the best evidence.

In its ruling on Wiley's motion to preclude the videos, the Court expressed concern regarding any footage depicting Wiley holding a firearm.[2] Although the "Chosen One" video

---

[2] "The Court also notes that given that Wiley is not charged with a criminal offense involving the use of a firearm, any depiction of firearms in these videos does not constitute evidence relevant to the charged offenses. These depictions also may be unduly prejudicial as they may inspire

14

contains several clips of Wiley holding a firearm (approximately 14 seconds of the 3 minutes and 14 second video), the depiction of Wiley with a firearm (which appears on a publicly available website) is not overly prejudicial in light of the anticipated evidence at trial regarding the WILEY DTO's possession of firearms. Indeed, Harry was found in possession of a (registered and legally possessed) handgun during his arrest on June 9, 2021. During the search of Harry's residence on June 9, 2021, law enforcement found an unregistered firearm in Harry's bedroom where a large quantity of fentanyl was found. Law enforcement also found multiple unregistered firearms while searching the Action Audio Store on June 9, 2021. Moreover, in intercepted wire communications, Wiley discusses the possession of firearms in connection with drug trafficking.

First, in an intercepted communication with codefendant Feliz (Session 511) on April 20, 2022, Feliz asked Wiley whether she should bring her gun, a "grip", to a drug transaction. Wiley replied, "You know niggas is situated." Feliz continued that she believed that Wiley would possess a firearm or be with someone who possessed a firearm, "be gripped up." Wiley told Feliz, "Yeah, you don't, you don't need to. [stammers] You know I'm coming with mine."

Next, Wiley had a conversation with another male about a rival with whom he had tension (Session 3625), because that individual took "work" (i.e., drugs) and caused an issue during a drug transaction. Wiley stated that the rival was trying to get others to "drop on" Wiley (either rob or assault) but they "can't do nothing to" Wiley because he is "situated every day when [he] go[es] in there," *i.e.* carries a gun. Wiley then discussed whether the rival carried a gun:

> **WILEY**: The nigga that I fuck with Killa bro we got tension because I- bro, I got on the phone with the nigga, bro, the nigga, the nigga had took my work from this nigga dad, bro. From the nigga, um, that be in the "A", he took my work from the nigga 'cause the nigga sold him some shit, some of them lows or whatever, the nigga took thew- I told that nigga, I'm like "Bro, word to my mother, I don't give a

irrelevant considerations by the jury in light of recent national headlines involving gun violence." Doc. # 375, n.1 at 3.

fuck what you, what you think, bro, that's my work nigga, don't- give me my shit back". Like, we was arguing on the phone, nigga. He like, nigga... bro, I still haven't seen the nigga since we sent threats to each other. That's another nigga that... [Voices Overlap]

0416: Who that? [Voices overlap]

**WILEY**: Huh?

0416: [Stammers] What's that punk-ass nigga...? That niggas a pussy, ask Putty O. He's a punk nigga, like, he's a clown nigga in Norwalk. Ask Putty O like, that nigga's a pussy. It's that nigga- [Voices Overlap]

**WILEY**: Yeah, but bro, them niggas, them niggas been trying to get niggas to drop on me, but them niggas can't do nothing to me, bro. I be, I be [Voices Overlap]

0416: Yeah but what I'm saying is, that [Voices Overlap]

**WILEY**: I be situated every day when I go in there bro, but I'm, bro, but [Stammers] I be feeling like, like nigga... like I owe- I don't know this shit just- [Voices Overlap]

0416: You know that bum-ass nigga don't even own no gun. Number one. He ain't got it. [Voices Overlap]

**WILEY**: Yeah, bro.

In the same call, Wiley said that he carried a firearm, saying "Mind you, I got the grip (i.e., a gun) inside the club and all that, we coulda did these niggas filthy." Wiley's discussion of firearms and that he is "situated," along with his posturing with a firearm for a total of fourteen seconds in one of the four videos (where he also displays his expensive jewelry and luxury vehicles) should also be considered by the jury as Wiley's public display as a successful drug trafficker (as opposed to a mere street-level seller) who should be respected by rivals.

Based on intercepted wire communications, communications in furtherance of the drug trade and where Wiley is discussing his drug trafficking, he claims that he carried a gun (a "grip") or, to coconspirator Feliz, that "I'm coming with mine" (referring to a gun). (But, no firearm was found in Wiley's possession upon his arrest.) The Government also intends to introduce an expert

16

experienced in the field of drug trafficking who is expected to testify that firearms, like those found at Harry's residence and Action Audio (locations used by the WILEY DTO to store, prepare, and distribute controlled substances), are commonly used in connection with drug trafficking to protect large quantities of drug product and cash, or to signal to rivals that a DTO is armed and protected. In light of the expected evidence regarding firearms, it would not be overly prejudicial to admit approximately 14 seconds of footage of Wiley holding a firearm, footage that he publicly disseminated and footage that occurs while Wiley sings about his role as a drug trafficker.

### C. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court admit the YouTube videos and allow the jury to use the Government's transcripts of the audio as aids.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

＿＿*/s/*＿＿＿＿＿＿＿＿＿＿＿＿＿
ROBERT S. DEARINGTON
Federal Bar No. ct28862
PATRICK J. DOHERTY
Federal Bar No. PHV10400
ELENA L. CORONADO
Federal Bar No. PHV09758
ASSISTANT U.S. ATTORNEYS
1000 Lafayette Blvd., 10th Fl.
Bridgeport, Connecticut 06604

# CERTIFICATE OF SERVICE

This is to certify that on June 22, 2022, a copy of the foregoing was filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

＿＿*/s/*＿＿＿＿＿＿＿＿＿＿＿＿＿
ROBERT S. DEARINGTON
ASSISTANT U.S. ATTORNEY