UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Crim. No. 3:21cr98 (JBA) |
|---|---|
| v. | |
| TAJH WILEY | July 8, 2022 |

**RULING ON THE GOVERNMENT'S MOTION TO ADMIT YOUTUBE EVIDENCE**

On June 10, 2022, the Court denied without prejudice Wiley's motion to preclude YouTube videos at trial and directed the Government to identify what videos it seeks to admit [Doc. # 375]. On June 22, 2022, the Government filed a motion in limine to admit excerpts of four rap videos, and transcripts and images from each video.[1] (Gov't Mem. of L. in Supp. of Mot. to Admit YouTube Evid. ("Gov't Mem.") [Doc. # 392-1].)

The videos, each published to YouTube between May 31, 2020 and December 11, 2020,[2] depict Defendant Tajh Wiley holding unknown sums of cash, sitting in or near various luxury vehicles, and performing rap songs that include lyrics laced with profanities, describing drug distribution, Wiley's claimed wealth and gambling losses, and other content about Wiley's life. The Government seeks to introduce this evidence because they "include his own words and admissions about his drug distribution" which, the Government maintains, will aid it in carrying its burden to prove that Wiley conspired with others to sell

---

[1] During the pre-trial conference held on July 5, 2022 [Doc. # 404], the Government supplied the Court with a revised transcript of the lyrics it seeks to introduce. Because the revised transcript includes fewer lyrics and no additions, it does not materially affect the Court's analysis as to which lyrics are admissible.

[2] The Government charges Wiley with entering a conspiracy with others to distribute controlled substances between January 2020 through June 9, 2021 and with possessing with intent to distribute cocaine base on June 9, 2021. (Superseding Indictment [Doc. # 179] at 1.)

drugs and his intent to do so. (Gov't Mem. at 14.) Wiley opposes the introduction of these video excepts, transcripts, and images, raising several arguments. (Def.'s Obj. to Gov't Mot. to Admit YouTube Evid. ("Def.'s Obj.") [Doc. # 401].) Wiley argues that (1) the introduction of the evidence against him in a criminal proceeding would chill his First Amendment right to free expression because the contents of the videos constitute his artistic expression in the form of rap music, (2) the evidence is barred by Federal Rule of Evidence 403 because it is overly prejudicial, and (3) the evidence is barred by Federal Rule of Evidence 404 as impermissible character evidence.[3] (*Id.* at 2.)

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). To determine whether the evidence is admissible, the Court measures it against each of Wiley's arguments against its inclusion.

I.   **First Amendment**

At the outset, the Court notes that while Wiley argues that rap is a form of expression protected by the First Amendment, "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). Instead, where the First Amendment is concerned, "[t]he crucial question is whether the evidence at issue was used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his

---

[3] Wiley relies on his prior motion to preclude filed on January 21, 2022 and adopts as his own the arguments made seeking to preclude rap music videos in another criminal case. *See* Mem. of L. in Supp. of Mot. in Limine to Exclude Rap Music, Videos, and Associated Content, *United States v. Gilbert*, 3:20-cr-00058 (KAD) (D. Conn. Feb. 16, 2022). Wiley has attached a copy of that defendant's memorandum as Defendant's Exhibit A [Doc. # 379-1]. No ruling on that motion has been issued.

abstract beliefs." *United States v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008). Where a defendant "does not face prosecution for his speech," there is no danger of violating that defendant's rights guaranteed by the First Amendment. *United States v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1871909, at *3 (E.D.N.Y. May 8, 2014), *aff'd*, 762 F. App'x 25 (2d Cir. 2019).

Here, that the video excerpts and related evidence happen to be in the form of musical expression does not mean that the Government is attempting to criminalize Wiley's freedom of expression. The Government seeks to introduce this evidence as proof of the existence of the alleged criminal conspiracy to distribute controlled substances, Wiley's membership and association with other members therein, and his familiarity with the drug trade. (Gov't Mem. at 8-10.) Considering the conduct the Government alleges, its motivations for introducing this evidence are permissible under the First Amendment. Accordingly, the Court concludes that the First Amendment does not preclude their introduction.

## II.   Rules of Evidence[4]

### A.  Rule 403

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But, under Rule 403 of the Federal Rules of Evidence, the Court has "broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative."

---

[4] As an initial note, the admission of these videos, in whole or in part, does not pose a Sixth Amendment Confrontation Clause issue because the videos are not testimonial in nature. *See United States v. Gamory*, 635 F.3d 480, 494 n.15 (11th Cir. 2011) (holding that rap music videos do not meet the definition of "testimonial" under *Crawford v. Washington*, 541 U.S. 36 (2004)). Moreover, any Government witnesses who will testify about their meaning are subject to cross-examination. *See Crawford*, 541 U.S. at 61 (noting that "the Clause's ultimately goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee," requiring only "that reliability be assessed in a particular manner: by testing in the crucible of cross-examination").

*United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing Fed. R. Evid. 403).

Rule 403 also provides for the exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Evidence is unduly prejudicial not when it suggests a defendant's guilt, but instead when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Massino*, 546 F.3d 123, 133 (2d Cir. 2008) (citation and quotations omitted). In other words, Rule 403 likely bars evidence that creates "an undue tendency to suggest decision on an improper basis." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). When considering the prejudicial effect of proffered evidence, the availability of alternative testimony is "properly consider[ed] . . . as a factor in balancing the probative value and the risk of prejudice" even though it does not alone provide a basis for excluding evidence. *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006).

Evidence in the form of rap music and imagery has been a distinct issue for courts. On the one hand courts have admitted rap videos into evidence where the content resembled aspects of the crime alleged, *Herron*, 2014 WL 1871909, at *4; *United States v. Wilson*, 493 F. Supp. 2d 484, 488-89 (E.D.N.Y. 2006), helped establish the defendant's association with members of a violent street gang and his motive to participate in the charged conduct, *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015), and demonstrated his knowledge of the drug trade and certain drug code words, *United States v. Foster*, 939 F.2d 445, 456 (7th Cir. 1991). Those courts that have admitted rap music into evidence found the relevance of the lyrics to the charged conduct not substantially outweighed by the risk of unfair prejudice because they held that the use of profanity and shocking imagery is generally not more inflammatory than the charged crimes. *See, e.g.*, *Herron*, 2014 WL 1871909, at *5 (citing

*United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (admitting evidence to help establish charges of murder in-aid-of racketeering, among other things).

On the other hand, some courts have expressed concern that the fundamental nature of rap music as a form of artistic expression that frequently features aggressive and hyperbolic language would pose too great a risk of undue prejudice. *See, e.g.*, *United States v. Johnson*, 469 F. Supp. 3d 193, 222 (S.D.N.Y. 2019) (excluding as irrelevant and unduly prejudicial rap lyrics that made references to violence, possible allusions to police misconduct, and used profanity, but appeared to have little to no probative value); *United States v. Stephenson*, 550 F. Supp. 3d 1246, 1255 (M.D. Fla. 2021) (excluding videos due to the risk that the jury would render a conviction based on defendant's rap lyrics incorporating profane, offensive, and racially insensitive words and violent and sexual imagery, which was far greater than probative value of evidence in establishing defendant's knowledge, possession, and intent); *United States v. Williams*, No. 3:13-cr-00764-WHO-1, 2017 WL 4310712, at *7 (N.D. Cal. Sept. 28, 2017) (noting that songs are a form of artistic expression, and as with any artistic expression, it is difficult to distinguish between reality and fantasy). Indeed, there is a danger that some members of the jury will consider rap music in particular "more offensive, in greater need of regulation, and more literal and autobiographical" than another genre featuring the same lyrics. Adam Dunbar, Charis E. Kubrin & Nicholas Scurich, *The Threatening Nature of "Rap" Music*, 22 Psych., Pub. Pol'y & L. 280, 288 (2016).

Courts have also concluded that rap lyrics and videos are inadmissible when they have a tenuous connection to the charged conduct. *See, e.g.*, *United States v. Sneed*, 3:14 CR 00159, 2016 WL 4191683, at *5-6 (M.D. Tenn. Aug. 9, 2016) (rap video which appeared to depict the defendant and other individuals performing a rap song containing lyrics about drug sales and gang activity was irrelevant to the defendant's alleged participation in the charged conspiracy); *Gamory*, 635 F.3d at 493 (rap music video excluded where the video

5

did not feature the defendant nor was evidence introduced that defendant had authored the lyrics or adopted the views expressed in the video); *State v. Skinner*, 218 N.J. 496, 500 (2014) (concluding that rap lyrics, which predated the alleged crime "constituted highly prejudicial evidence against [the defendant] that bore little or no probative value as to any motive or intent behind the attempted murder offense with which he was charged").

The Court distills two principles from the analyses of these courts. First, rap music as a genre often glorifies violence, misogyny, crime, and other offensive messaging which makes its introduction into evidence potentially highly prejudicial. While it is true, as the Government argues, that evidence is not unduly prejudicial if it does "not involve conduct more inflammatory than the charged crime," *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006), attitudes toward the messaging in rap music and its imagery could have an "adverse effect" on Wiley "beyond tending to prove the fact or issue that justified" the admission of some of the rap video evidence offered by the Government. *See United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013). Second, although rap music often contains first-person accounts of the speaker's lifestyle and activities—including criminal activities—the lyrics are not always autobiographical statements. Accounting for this reality, the Court recognizes that not every lyric in a rap video is probative of the charged conduct and that, because the videos pose a great risk of unfair prejudice, it is necessary to distinguish between lyrics with probative value and those without.

Applying these principles to the video excerpts, transcripts, and images the Government seeks to introduce, the Court will admit only those lyrics that tend to demonstrate Wiley's knowledge of the drug trade, his involvement and objectives in drug dealing, and his relationship with a co-conspirator (Kenton Harry). Lyrics containing statements with only a tenuous connection to the charged conduct (for example, vague statements about Wiley's youthful origins in drug trafficking, i.e., prior bad acts) are

6

irrelevant,[5] but statements or images with offense-specific content tending to corroborate the Government's other evidence (such as Wiley's statements about his use of a "press machine" to facilitate his drug trade and images of him with vehicles that are allegedly proceeds of drug trafficking or belong to a co-conspirator) will be admitted. This distinction is necessary because, only where the Government can point to lyrics that communicate specific details related to the charged conduct is the Court confident that evidence's probative value is not substantially outweighed by the risk of unfair prejudice. For clarity, the Court has attached its finding on admissible lyrics in the Appendix to this decision.

### B. Rule 404(b)

The video excerpts, transcripts and images that are admissible under Rule 403's balancing test must also be evaluated under Rule 404(b), as each rule poses distinct questions, and admissibility under one rule does not govern admissibility under the other. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b).

To the extent the rap video evidence constitutes a prior bad act within the meaning of Rule 404(b), the evidence the Court already has determined admissible under Rule 403 is also admissible under Rule 404(b). The Government does not offer this evidence to demonstrate Wiley's bad character, but instead to show his knowledge of and participation in the drug trade, his motivations for engaging in it, and his access to certain tools and

---

[5] What relevance those statements have as to Wiley's knowledge of the drug trade is substantially outweighed by the prejudicial effect that they would have on Wiley given that they suggest that Wiley has been involved in criminal behavior since he was a teenager. Whatever reprehensible conduct Wiley may have engaged in as a youth, it will not be at issue in this trial.

proceeds thereof. To illustrate the point, the Court borrows an analogy from the Seventh Circuit:

> [A]dmitting [a] rap verse was not the equivalent of admitting The Godfather as evidence that Mario Puzo was a mafia don. . . . It was, instead, the equivalent of admitting The Godfather to illustrate Puzo's knowledge of the inner workings of an organized crime family.

*Foster*, 939 F.2d at 456. Therefore, the Court finds that the Government's proposed use of the Defendant's lyrics and music videos (that remain admissible under the Court's Rule 403 analysis) does not violate Rule 404(b).

### III. Conclusion

In light of the Government's revised position seeking to introduce significantly fewer lyrics than in its original motion, the Government's motion [Doc. # 392] is GRANTED in part as to most of the lyrics it now seeks to offer into evidence (see attached Appendix). The Government's motion is DENIED as to the remaining lyrics which the Court concludes are inadmissible under the above analysis.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.
Dated at New Haven, Connecticut this 8th day of July 2022.